UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sriram Shanmugavelandy, ) | |
| ) | |
|     Plaintiff. ) | |
| ) | Case No. 22-cv-02975 |
|           v. ) | |
| ) | Judge Sharon Johnson Coleman |
| AbbVie, Inc., ) | |
| ) | |
|     Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff, Sriram Shanmugavelandy[1] ("Plaintiff") filed his Complaint against Defendant AbbVie, Inc. ("Defendant") for national origin discrimination and retaliation in violation of Title VII. Before the Court is Plaintiff's motion for summary judgment and Defendant's motion for summary judgment. The Court held oral argument on the motions on April 24, 2025. For the following reasons, the Court grants Defendant's motion for summary judgment [139] and denies Plaintiff's motion for summary judgment [232, 235, 236].

**BACKGROUND**

Litigants in the Northern District of Illinois are required to abide by Local Rule 56.1 in their summary judgment filings. A party moving for summary judgment is required to file "a statement of material facts . . . that attaches the cited evidentiary material" with its motion. Local Rule ("L.R.") 56.1(a)(2). Each statement must "be supported by citation to the specific evidentiary material,

---

[1] While the Court acknowledges that Plaintiff is proceeding *pro se*, Plaintiff previously had multiple different attorneys representing him in this matter. Despite being represented throughout the matter, Plaintiff was unable to work with his attorneys and ultimately decided that he was better suited to represent himself. Plaintiff has represented himself throughout the duration of the summary judgment briefing, including at oral argument. His status as a *pro se* litigant does not excuse his failure to comply with the Local Rules. *See Coleman v. Goodwill Indus. of Southeastern Wis., Inc.,* 423 Fed. Appx. 642, 642 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with the local rules.").

1

including the specific page number, that supports it." L.R. 56.1(d)(2). The evidentiary material submitted in support of the statement must "be included as numbered exhibits . . . ." L.R. 56.1(d)(3). These requirements apply to the material statement of facts, as well as to any response or statement of additional material facts. The pleading must "consist of concise numbered paragraphs" which may "not exceed 80 numbered paragraphs." L.R. 56.1(d)(1), (d)(5).

The party opposing summary judgment is required to file a response to the moving party's statement of material facts "that attaches any cited evidentiary materials not attached to [the moving party's] statement [of material facts]." L.R. 56.1(b)(2). In responding to the statement of material facts, the non-moving party must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. L.R. 56.1(e)(2). The response must consist of numbered paragraphs corresponding to the numbered paragraphs in the statement of material facts or statement of additional material facts. L.R. 56.1(e)(1). It may not include any new facts that are not fairly responsive to the asserted fact to which the response is made nor contain legal argument. L.R. 56.1(e)(2).

If the non-moving party wishes to assert a new fact that is not responsive to the moving party's asserted facts, the party opposing summary judgment can file a statement of additional material facts, with cited evidentiary material that is not attached to the statement of material facts or the response. L.R. 56.1(b)(3).

## I.  Plaintiff Fails to Abide by Local Rule 56.1

Plaintiff failed to abide by L.R. 56.1 in three separate pleadings: (1) Plaintiff's response to Defendant's statement of material facts; (2) Plaintiff's statement of additional material facts; and (3) Plaintiff's statement of material facts in support of Plaintiff's motion for summary judgment. The Court will address the deficiencies in each of the pleadings.

1. *Plaintiff's Response to Defendant's Local Rule 56 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment*

Plaintiff's response to Defendant's L.R. 56 statement of material facts (Dkt. 220) is improper in several ways discussed below. While the Court has discretion to require strict compliance with L.R. 56.1, it may insist on doing so. *Stevo v. Frasor,* 662 F.3d 880, 886-87 (7th Cir. 2011). The Court will exercise its discretion here due to the importance of promoting clarity in addressing factual disputes at summary judgment. Indeed, it is not the Court's duty to go on an expedition in adjudicating such motions. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

   a. *Inclusion of Additional Information*

Here, Plaintiff's response admits to many of Defendant's material statements, but goes further by providing additional, non-responsive information. Doing so is improper. *McGuire v. United Parcel Service,* 152 F.3d 673, 675 (7th Cir. 1998). Accordingly, the Court strikes Plaintiff's Response Nos. 8–9, 23–25, 33–71, and 73–79 and deems the statements admitted.

   b. *Responses Containing Legal Argument*

Courts in this district have disregarded legal arguments asserted in L.R. 56.1 submissions. *See, e.g., Venticinque v. City of Chicago,* No. 21 C 3084, 2025 WL 92536, at *1 (N.D. Ill. Jan. 13, 2025) (Ellis, J.); *Fetzer v. Wal-Mart Stores, Inc.,* No. 13 C 9312, 2016 WL 792296, at *8 (N.D. Ill. Mar. 1, 2016) (Gottschall, J.) This Court will follow suit. Accordingly, the Court strikes Plaintiff's Response Nos. 14– 22, 26– 32, and 72 and deems the statements admitted.

2. *Plaintiff's Statement of Additional Material Facts in Response to Defendant's Motion for Summary Judgment*

Plaintiff submitted a statement of additional material facts in response to Defendant's motion for summary judgment. (Dkt. 221.) The statement of additional material facts consists of a variety of

3

unordered numerical, alphabetical, and bullet point paragraphs. While this alone qualifies as a basis for striking Plaintiff's statement of additional facts, the Court notes that the pleading is also flawed in at least one of two other respects: (1) the statement cites evidentiary material that does not support the information proffered in the statement; and/or (2) the statement fails to cite *any* evidentiary material to support the proffered statement. Therefore, the Court strikes Plaintiff's statement of additional material facts.

    3. *Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment*[2]

Plaintiff's statement of material facts in support of his motion for summary judgment (Dkt. 236) suffers from similar flaws as well.[3]

    a. *Unconcise Paragraph Numbering*

Like Plaintiff's statement of additional material facts, Plaintiff's statement of material facts consists of non-chronological numerical paragraphs, some of which are duplicative of the same number, include lettered paragraphs and bullet points, and skip numbers in labeling the paragraphs.[4] Due to these flagrant violations, which exhaust the Court's time and resources, the Court strikes Plaintiff's Statement Nos. 31–33 on page 5, 15-19 on page 5, 20–27 on page 6, 28–34 on page 7, and the second 72 on page 9. While striking these paragraphs does not remedy Plaintiff's transgression, it removes the violations of the duplicative numbered paragraphs.

---

[2] Defendant also argues that Plaintiff's memorandum in support of Plaintiff's motion for summary judgment violates Local Rule 56.1(g) for failing to cite specific paragraphs in the statement of facts in support of its factual statements. Local Rule 56.1(g) requires a memorandum of law filed in support of a motion for summary judgment "cite directly to specific paragraphs in the LR 56.1 statements or responses" when addressing facts. L.R. 56.1(g). Defendant argues that the Court should, at a minimum, "disregard all of the unsupported factual assertions that appear throughout Plaintiff's memorandum." The Court finds that striking all of the statements in Plaintiff's statement of material facts, as described in the previous section, is sufficient to address this issue.
[3] While Plaintiff filed three separate motions for summary judgment (one of which was filed under seal), Plaintiff only submitted the statement of material facts under seal. Therefore, the Court will reference only the docket number in the sealed motion in analyzing Plaintiff's statement of material facts.
[4] For the sake of clarity, the Court notes that Plaintiff's statement of material facts in support of his motion for summary judgment does not contain number 1 or number 85, so these numbers are not included in the Court's analysis.

b. *Statements in Excess of 80 Paragraphs*

As discussed, Plaintiff's statement of material facts contains a multitude of different styles of paragraph numbers, letters, and bullet points. All together, these paragraphs exceed the 80-paragraph limit. While the Court will not count the paragraphs that were stricken for duplicative numbering (nor the several subparagraphs included under paragraph number 20 on page 3 of the statement of material facts) toward the 80-paragraph limit, the Court will strike any statements in excess of 80 paragraphs. Accordingly, the Court strikes Plaintiff's Statement Nos. 102– 108 on page 13.

c. *Failure to Properly Cite Evidentiary Material*[5]

Here, Plaintiff's Statement Nos. 2, 3, 5–7, 20-bullet point 1, 20-bullet point 3, 20B, 20C, 21, 27, 76, 79–81, 83, 88, and 96–101 do not include citation to *any* evidentiary material in support of the statement. Additionally, Plaintiff's Statement Nos. 12, 13, 17, 18– 20, 20– bullet points 2 and 3, 20A, 22–24, 26, 28, 35, 40, 69, 73– 75, 82, 87, 91, 93, and 95 fail to cite to a specific page number in the cited evidence as required by the Local Rules. *See* L.R. 56.1(d)(2). Lastly, Plaintiff's Statement No. 25 fails to cite evidentiary material that supports the proffered statement. Therefore, the Court strikes these statements.

d. *Failure to Cite Numbered Exhibits*

Plaintiff's Statement Nos. 4, 8–11, 14–16, 29–34, 36–39, 41–44, 64–68, 70–72, 78, 84, 86, 89, 90, 92, and 94 fail to cite numbered exhibits in reference to the cited material. Accordingly, the Court strikes these statements as well.[6]

**II.     Discovery Violations**

---

[5] Defendant argues that Plaintiff's statement of material facts is not supported substantively by the cited material. In an effort to conserve the already exorbitant judicial resources that have been spent on this matter, the Court will focus its analysis on Plaintiff's failure to abide by the procedural requirements of L.R. 56.1.

[6] The Court notes that Plaintiff's Statement Nos. 31–34, 38, 41, 64, 66, 92, and 94 include exhibit numbers in addition to the document name. The exhibit numbers, however, do not reflect the correct document that Plaintiff offers in support of the material statement. Furthermore, the exhibit numbers do not contain specific page numbers in violation of the Local Rules.

A large portion of Plaintiff's summary judgment materials are dedicated to putting forth allegations of discovery violations against Defendant. These claims are not only baseless, but they are entirely frivolous. Not only did Magistrate Judge Fuentes go to incredible lengths in overseeing discovery of this matter, ruling on objections to discovery throughout the referral (*see* Dkt. 79, 85), but this Court also engaged in discovery practice with the parties following the termination of the magistrate referral. Specifically, the Court re-opened discovery and allowed Plaintiff the opportunity to take depositions and submit additional discovery requests to the Court to determine whether any additional discovery was necessary. (*See* Dkt. 153, 159.) Plaintiff filed additional discovery requests and failed to notice and take depositions by the Court-imposed deadline. The Court ruled on Plaintiff's additional discovery requests, finding that Plaintiff received all relevant discovery. (*See* Dkt. 175.) Additionally, Plaintiff's failure to take depositions, before discovery initially closed and when the Court reopened discovery, was his personal choice, not the result of any unjust rulings or discovery violations. Plaintiff's discovery arguments are completely meritless. Any argument that Defendant engaged in discovery violations, much less Rule 37 sanctionable conduct, is preposterous and will not be considered in the Court's ruling.

### III. Undisputed Facts

Because Plaintiff has failed to properly assert statements of material fact in his summary judgment materials per Local Rule 56.1, the Court will adopt the undisputed facts as proffered by Defendant.

1. *Plaintiff's Employment with Defendant AbbVie*

Plaintiff began working for Defendant in 2017 as a Scientist I. He held the same position until he was terminated on October 25, 2022. As a Scientist I, Plaintiff was tasked with implementing and running tests of Defendant's pipeline cancer drugs on animals "to see if they work."

   a. *Defendant's Commitment to the Ethical Treatment of Animals in Laboratory Facilities*

During Plaintiff's employment, Defendant maintained a Code of Business Conduct (the "Code") which outlines Defendant's commitment to abiding by applicable regulations and standards for the humane treatment of animals for research use. Defendant also adhered to the Rodent Solid Tumor Endpoints & Oversight Expectation (the "Expectation"). The Expectation describes the professional and ethical obligations of complying with animal welfare guidelines and protocols when handling animals in a research and testing environment. Plaintiff was aware of and receiving training on the Code and the Expectation. In addition to scientists, Defendant also employs veterinarians and animal care technicians who are responsible for overseeing the well-being of lab animals. These employees are regularly in the lab and vivarium to ensure that research scientists, such as Plaintiff, are exhibiting the appropriate levels of animal welfare in their research work.

Defendant also established the Institutional Animal Care & Use Committee ("IACUC"), required by federal mandate for all companies that use certain live or dead animals for research and testing purposes. IACUC, an eleven-member group which includes three non-Defendant employes who are neither veterinarians nor animal laboratory technicians, oversees and evaluates all aspects of "the animal care and use programs." Any individual who has an animal welfare complaint can anonymously raise the issue to IACUC. IACUC, in turn, reviews animal welfare complaints and determines whether such complaints warrant further action, "such as a response from leadership or the employee."

      b. *Plaintiff's Animal Welfare Complaints*

From 2018 to October 25, 2022, IACUC received more animal welfare complaints regarding Plaintiff than any other employee. Starting in 2018, Plaintiff was first banned from going into the vivarium "for a week or two" based on IACUC's investigation into animal welfare complaints regarding Plaintiff. In the middle of 2020, IACUC, again in response to animal welfare complaints, placed Plaintiff on probation for "two to three months." IACUC suspended Plaintiff from all animal

7

activities "until further notice" on December 16, 2021, and issued a memorandum to notify Plaintiff of the suspension (the "December 16 Memorandum"). The December 16 Memorandum stated that Plaintiff's suspension was "based on incidents of significant protocol non-compliance and negligent behavior that resulted in compromised animal health and welfare." The December 16 Memorandum mentioned Plaintiff's prior animal welfare issues. After two weeks, Plaintiff was permitted to work with animals, but could only do so under the supervision of animal care technicians. Plaintiff received additional training and oversight in January 2021 for the continued animal welfare complaints.

On October 21, 2022, IACUC permanently banned Plaintiff from working with animals and issued another memorandum to notify Plaintiff of the permanent ban (the "October 21 Memorandum"). The October 21 Memorandum stated that the ban was "based on on-going incidents of dereliction of attentiveness to processes and procedures in place to ensure appropriate care for research animals under [Plaintiff's] responsibility." It gave numerous examples of additional animal welfare complaints by Plaintiff since the December 16 suspension. Once IACUC permanently banned Plaintiff from working with animals, he could no longer perform the essential functions of his job. Because Plaintiff could not perform his job duties, he was terminated on October 25, 2022.

c. *Plaintiff's Performance Ratings*

Defendant gives its employees an annual performance rating ranging from 1 to 5, with 1 being the lowest and 5 being the highest rating. From 2018– 2021, Plaintiff received the following ratings for each respective year: 2, 3, 2, and 2. Plaintiff disagreed with each annual rating.

2. *Plaintiff's Protected Conduct*

Plaintiff's first internal complaint of discrimination or retaliation occurred in March 2019 and his last complaint occurred in March 2021. Defendant investigated Plaintiff's complaints and determined the claims to be unfounded. Plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 22, 2021, and his second, and final,

8

EEOC charge of discrimination on December 30, 2021. IACUC was unaware of the internal complaints and the charges of discrimination.

3. *Similarly Situated Employees*

Defendant claims G.M. is a similarly situated employee to Plaintiff. Like Plaintiff, G.M. is also of Indian origin. G.M. began as a Scientist, Pharmacology, and was later promoted to Scientist II, Pharmacology and then to Senior Scientist I, Pharmacology. Plaintiff reported to Dan Albert from 2017 until August 2022. G.M. was the only employee, other than Plaintiff, that Albert supervised during the relevant time period.

Plaintiff claims L.M., a Chinese employee, is similarly situated to him. L.M. reported to Keith Hamel during the relevant time period. L.M. began as a Scientist I and was promoted to Scientist II. From 2018– 2021, L.M. received the following performance ratings for each respective year: 4, 4, 3, and 3.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (citation omitted).

**DISCUSSION**

As an initial matter, Plaintiff offers a plethora of cases in his summary judgment pleadings that do not support the statement or legal principle for which it is cited as support. During oral arguments, Plaintiff admitted to the use of artificial intelligence technologies, in violation of the Court's standing order, in drafting his pleadings. While the Court commends Plaintiff for his honesty, the Court cannot turn a blind eye to this behavior and must take this violation, as well as Plaintiff's lack of relevant or accurate case law into consideration in resolving these motions.

The parties dispute the proper time period that should apply to Plaintiff's claims for statute of limitations purposes. Defendant argues that any claims prior to April 28, 2020, 300 days before the filing of Plaintiff's February 22, 2021 EEOC charge of discrimination, are barred by the statute of limitations. Plaintiff contends that the continuing violations doctrine applies and allows Plaintiff to bring claims for actions that occurred prior to April 28, 2020. Because Plaintiff does not explain why the continuing violations doctrine applies to his claims, the Court finds the argument is waived. *Schaefer v. Universal Scaffolding & Equipment, LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("[P]erfunctory and underdeveloped arguments are waived, as are arguments unsupported by legal authority."). The Court dismisses any of Plaintiff's claims to the extent such claims concern events or actions prior to April 28, 2020.

### I. National Origin Discrimination

Plaintiff alleges national origin discrimination under Title VII. In evaluating the merits of an employment discrimination action, the Seventh Circuit has ruled that the ultimate question is whether the evidence would allow a reasonable factfinder to conclude that the plaintiff's protected characteristic caused the adverse employment action. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In presenting this evidence, a plaintiff may utilize the *McDonnell Douglas* burden-shifting framework or demonstrate that, in considering all relevant evidence, a reasonable factfinder must conclude that the employer engaged in an adverse action based on such protected characteristic.

10

*See McDaniel v. Progress Rail Locomotive, Inc.,* 940 F.3d 360, 368 (7th Cir. 2019). Under the *McDonnell Douglas* framework, a plaintiff must provide evidence that (1) he is a member of a protected class; (2) his job performance met the employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) a similarly situated person outside his protected class received more favorable treatment. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff meets each element, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *See McDaniel,* 940 F.3d at 368. If defendant can do so, the burden shifts back to plaintiff to offer evidence that defendant's explanation is pretextual. *See id.* at 368.

The parties dispute the second and fourth prong of the *McDonnell Douglas* framework. Defendant argues that Plaintiff cannot show that he suffered national origin discrimination because his job performance did not meet Defendant's legitimate expectations and there was no similarly situated person outside his protected class that received more favorable treatment. Defendant contends that the only similarly situated employee, G.M., was also of Indian origin and received promotions, unlike Plaintiff. Plaintiff argues that he was meeting Defendant's legitimate expectations as he received positive reviews before engaging in protected activity. Plaintiff claims that any low performance reviews were manipulated in order for Defendant to justify its adverse actions. Plaintiff also contends that Defendant applied a stricter scrutiny to Plaintiff compared to non-Indian employees, such as L.M., an Asian employee.

As to the second *McDonnell Douglas* prong, whether Plaintiff's job performance met Defendant's legitimate expectations, the Court finds the uncontested facts show that Plaintiff's job performance fell far short of any legitimate expectations. The record shows that from 2018 to 2021, Plaintiff received a 2, 3, 2, and 2 for his annual performance ratings for each respective year. Plaintiff's assertion that he received positive reviews before engaging in protected activity is completely unsupported by the record. Moreover, Plaintiff's argument that his performance reviews were

11

"manipulated" are likewise threadbare and unsupported by the evidence. Indeed, the opposite proves to be true: Plaintiff had the highest number of animal welfare complaints out of all employees and had several disciplinary actions taken against him due to the complaints. The Court, therefore, finds that Plaintiff's job performance fell short of Defendant's legitimate expectations.

As to the fourth *McDonnell Douglas* prong, whether a similarly situated person outside Plaintiff's protected class received more favorable treatment, the Court finds that Plaintiff fails to satisfy this prong as well. An employee is "similarly situated" to a plaintiff if he is "directly comparable in all material respects." *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005). This requires a plaintiff to show not only that the employee reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also that no differentiating or mitigating circumstances existed that would distinguish the employer's treatment of the plaintiff. *Ineichen,* 410 F.3d at 960-61.

Plaintiff's proffered comparator, L.M., is not a "similarly situated employee." As the record shows, L.M. had a different supervisor, higher performance ratings, and did not engage in similar misconduct to Plaintiff. At oral argument, Plaintiff presented additional argument that L.M. was a sufficient comparator because L.M. and Plaintiff were in the same larger department. However, Plaintiff fails to cite any caselaw to support that merely belonging to the same department satisfies the "similarly situated" threshold to establish a discrimination cause of action under the *McDonnell Douglas* framework. While Plaintiff offers two incident reports related to L.M., this documentation is not enough to show that any misconduct L.M. engaged in rose to the level of, or was as repetitive as, Plaintiff's record of misconduct. Indeed, the undisputed facts demonstrate that IACUC received the highest number of reported animal welfare complaints regarding Plaintiff than any other employee during the relevant time period.

The Court finds that Defendant's proffered comparator, G.M., is more "similarly situated" to Plaintiff. G.M. reported to the same supervisor and was promoted twice during Plaintiff's tenure,

12

while Plaintiff was not promoted. However, G.M. is also of Indian origin, which makes him an improper comparator. *See Jordan v. City of Gary, Ind.,* 396 F.3d 825, 833 (7th Cir. 2005) (finding plaintiff failed to establish a *prime facie* case for discrimination where proffered comparator was from the same protected class). The Court finds that there was no similarly situated individual that received more favorable treatment than Plaintiff outside his protected class.

As Plaintiff failed to carry his burden to establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment on Plaintiff's national origin discrimination claim.

## II. Retaliation

To prevail on a retaliation claim in an employment discrimination case, a plaintiff must prove that (1) she engaged in an activity protected by the statute; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and adverse action. *Lesiv v. Ill. Central Railroad Co.,* 39 F.4th 903, 911 (7th Cir. 2011). The parties dispute the second and third prong of the retaliation analysis. For the following reasons, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment as to Plaintiff's retaliation claim.

For the second prong, whether Plaintiff suffered an adverse employment action, Plaintiff claims that the poor performance reviews, his "performance improvement plan," the mandatory additional animal-welfare training, and eventual termination all constitute adverse employment actions. Defendant argues that only termination qualifies as an adverse employment action. The Court agrees. *See de la Rama v. Ill. Dept. of Human Services,* 541 F.3d 681, 686 (7th Cir. 2008) ("[N]egative performance evaluations . . . are not cognizable adverse employment actions."); *Watson v. Potter,* 23 Fed. App'x 560, 564 (7th Cir. 2001) ("Requiring [plaintiff] to attend [additional training] was reasonable and legitimate."); *Abebe v. Health and Hospital Corp. of Marion Cnty.,* 35 F.4th 601, 607 (7th

Cir. 2022) ("Performance improvement plans . . . are not . . . adverse employment actions.") In determining whether Plaintiff adequately pleads retaliation, the Court will only consider Plaintiff's termination as the adverse employment action.

As to the third prong, whether there is a causal link between the protected activity and adverse employment action, Plaintiff claims that the temporal proximity of his protected conduct and termination establish a causal link. But "suspicious timing alone rarely is sufficient to create a triable issue." *Moser v. Ind. Dept. of Corrections,* 406 F.3d 895, 905 (7th Cir. 2005). Here, Plaintiff was terminated on October 25, 2022. Prior to his termination, the most recent protected activity Plaintiff engaged in was the filing of his second EEOC charge of discrimination on December 31, 2021, 10 months prior to the termination. Ten months is too long of a gap between the protected activity and adverse action to find a causal link to support Plaintiff's retaliation claim. *Tomanovich v. City of Indianapolis,* 4576 F.3d 656, 665 (7th Cir. 2006) (finding a period of four months between the protected activity and adverse action too long to establish a causal link to support a retaliation claim).

**CONCLUSION**

For these reasons, the Court grants Defendant's motion for summary judgment [139] and denies Plaintiff's motion for summary judgment [232, 235, 236]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 6/2/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge